UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Rebecca J. Marshall


   v.                           Civil No. 08-cv-147-JD
                                     Opinion No. 2008 DNH 213

Michael J. Astrue, Commissioner,
Social Security Administration


O R D E R


Rebecca J. Marshall seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's decision to deny her application for Social Security Insurance Benefits and Supplemental Security Income.[1]  Marshall contests the Administrative Law Judge's ("ALJ") conclusion that she could return to her former work despite her mental impairment.  The Commissioner moves to affirm the decision.


Background

The background facts are set forth in detail in the parties' joint statement of material facts.  The following is a summary.

---

[1]Because the regulations applicable to Supplemental Security Income, Part 416, and Disability Insurance Benefits, Part 404, are identical for purposes of this case, for convenience, only the Part 404 regulations are cited in this order.  See Reagan v. Sec'y of Health & Human Servs., 877 F.3d 123, 124 (1st Cir. 1989).

Rebecca Marshall was thirty-six years old when the ALJ issued his decision in November of 2007.  She is a high school graduate and completed two years of college.  Her past relevant work was clerical.  She alleged a disability due to bipolar disorder.

Her medical evidence begins in October of 1997 when she was seen at the Stafford Guidance Center because she felt she lacked motivation.  She was taking medication for depression at that time.  Her Global Assessment of Functioning ("GAF") score was 60. A GAF provides an evaluation of an individual's functioning level, and a GAF of 51-60 indicates moderate difficulty in social, occupational, or school functioning.  Marshall was seen in 2000 for physical and emotional issues and was diagnosed with depression, with a prescription for Paxil to treat depression. In 2001, she was diagnosed with depression and a GAF of 51.

In 2002, Marshall was seen repeatedly for complaints of depression, sleep problems, anxiety, and other emotional issues. She was again diagnosed with depression but also with anxiety and was prescribed Paxil, Zoloft, and Effexor for depression and Ativan for anxiety.  She reported similar symptoms in 2003.  In April of 2004, she reported worsening depression, and on July 8, 2004 she was admitted to Portsmouth Regional Hospital for complaints of mood swings.  She was treated with psychotherapy

and Depakote, for bipolar disorder.  She was diagnosed with bi

polar disorder and a GAF of 45, indicating serious impairment.

She was treated during a series of medical visits in 2004 for

depression and bipolar disorder.  Her complaints and symptoms

continued to be treated through 2005 and 2006.

On July 27, 2007, her treating psychologist, Dr. David

Diamond, completed a Mental Impairment Questionnaire for

Marshall.  He explained that his contact with Marshall consisted

of psychotherapy sessions each week since October of 2006.  He

noted that she had bipolar disorder and post-traumatic stress

disorder with symptoms of depression, irritability, anger, and

mood swings.  He also noted that her mental impairment had

existed for more than two years.  With respect to her ability to

do work related activities, Dr. Diamond found that Marshall would

be unable to meet competitive standards for maintaining regular

attendance and punctuality.  He estimated that on average

Marshall would be absent from work for about four days each

month.  On September 18, 2007, Dr. Diamond stated that his

opinions continued to be appropriate.

Marshall's applications for social security benefits were

denied initially, and she requested an administrative hearing,

which was held before an ALJ on August 29, 2006.  The ALJ issued

an unfavorable decision on September 22, 2006, and Marshall

sought review by the Appeals Council.  On July 17, 2007, the
Appeals Council granted Marshall's request for review and vacated
the ALJ's decision, remanding the case to the ALJ for further
proceedings, including another hearing.

The second hearing was held on October 3, 2007.  Marshall
was represented by counsel.  Marshall testified, and a medical
and a vocational expert also testified.  Marshall testified that
she suffered from mood disorder, depression, anxiety, and bipolar
disorder.  She also testified about the symptoms caused by her
impairments and that she had difficulty finding medication
without severe side effects.  She said that her daily activities
included getting her children to school, doing housework, and
grocery shopping.

The medical expert, Dr. James Claiborn, testified that
Marshall met the diagnostic criteria for bipolar disorder.  He
testified that people with bipolar disorder can often function in
work environments that do not require complex instructions or
interaction with the public.  He said that Dr. Diamond had
provided a good description of Marshall's level of functioning in
his Mental Impairment Questionnaire.  Dr. Claiborn also testified
that Marshall had moderate restrictions in her activities of
daily living and a moderate limitation in her ability to maintain
social functioning.  He said that he was "in substantial

agreement with the rest of the documentation and [the Questionnaire] appears to be a valid description of [Marshall]." Trans. at 446.

The ALJ asked the vocational expert, John F. Bopp, a hypothetical question about an individual with Marshall's age, education, past work experience, and who needed a job with low stress, slow paced work, and without regular contact with the public or detailed instructions.  In response, Bopp testified that such an individual could do Marshall's past work as a data entry clerk.  He also testified that she could work as an order filler, hand packager, machine packager, and a hotel or motel cleaner.  In response to further questioning by Marshall's attorney, Bopp testified that if the individual would likely be absent from work for four days each month, she would not be able to work.

The ALJ found that Marshall had not engaged in substantial gainful employment since October 1, 1999, which was the date she claimed as the onset of her disability.  Based on Marshall's medical records, the ALJ found that she had bipolar disorder, a severe impairment, but that the impairment did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that Marshall's capacity to work was limited to low-stress jobs with minimal social interaction but that her

"credibility as to the severity of her symptoms [was], at best, suspect."  Admin. Rec. at 27.   The ALJ noted that Dr. Diamond, Marshall's treating psychologist, determined that she could "perform some variety of work."  Id. at 28.  The ALJ concluded that Marshall was not disabled.  The Appeals Council denied Marshall's request for review.

### Standard of Review

Judicial review of a social security determination under 42 U.S.C. § 405(g) is "limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence."  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  The Commissioner's decision must be supported by substantial evidence.  Seavey v. Barnhart, 276 F.3d 1, 9 (1st Cir. 2001).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).

The ALJ determines credibility, weighs conflicting evidence, and draws inferences from the evidence.  Seavy, 276 F.3d at 10; Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991).  The ALJ's decision, however, is "not conclusive when derived by ignoring evidence, misapplying the

law, or judging matters entrusted to experts." <u>Nguyen v. Chater</u>,
172 F.3d 31, 35 (1st Cir. 1999).


## Discussion

Marshall contends that the ALJ's decision must be reversed
because the ALJ did not properly consider Dr. Diamond's opinion
that she would likely be absent from work four days during each
month and also did not properly assess her credibility.  The
Commissioner contends that the ALJ properly assessed the record
and that substantial evidence supports the decision that Marshall
is able to return to her former work.

Disability for purposes of social security benefits is
evaluated by applying a five-step sequential process.  20 C.F.R.
§ 404.1520.  At the fourth step of the process, the Commissioner
considers whether, despite her impairments, the claimant is able
to return to her past relevant work.  § 404.1520(a)(4)(iv).  The
claimant bears the burden of showing that her impairments prevent
her from returning to her past work.  <u>Bowen v. Yuckert</u>, 482 U.S.
137, 146 n.5 (1987); <u>Kanash v. Astrue</u>, 2008 WL 794575, at *5 (D.
Mass. March 25, 2008).

A.   <u>Opinion of Treating Source</u>

In the Mental Impairment Questionnaire, Dr. Diamond
responded to a question, asking how often, on average, Marshall's
impairment would cause her to be absent from work, by checking
"About four days per month."  At the hearing, after the
vocational expert gave his opinion that a hypothetical claimant
with Marshall's characteristics could return to her former work
as a data entry clerk, along with other jobs, Marshall's attorney
asked what effect four absences each month would have on
available employment.  The vocational expert responded:  "That
level of absenteeism would preclude competitive employment."
Admin. Rec. at 458.  Therefore, if Dr. Diamond's opinion about
Marshall's level of absenteeism were credited, Marshall could not
work and would be disabled for purposes of social security
benefits.

In making a disability determination, the Commissioner gives
"more weight to opinions from [a claimant's] treating sources,
since these sources are likely to be the medical professionals
most able to provide a detailed, longitudinal picture of [a
claimant's] medical impairment(s) . . . ."  20 C.F.R.
§ 404.1527(d)(2).  If the treating source's opinion on the nature
and severity of the claimant's impairment "is well-supported by
medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with the other substantial
evidence in [the] case record, [the Commissioner] will give it
controlling weight." Id. If the treating source's opinion is
not entitled to controlling weight, the ALJ, on behalf of the
Commissioner, applies the factors listed in § 404.1527(d)(2)
through (6) to determine what weight to give the opinion. Id.
In addition, the ALJ is required to "give good reasons in [the]
notice of determination or decision for the weight we give [the]
treating source's opinion." Id.

The ALJ acknowledged Dr. Diamond's opinion evidence about
Marshall's limitations. He determined that Dr. Diamond was "an
acceptable medical source" and that Dr. Diamond's "opinion is
consistent with the medical record." Admin. Rec. at 28. He
interpreted Dr. Diamond's opinions to conclude that Marshall "can
perform some variety of work." Id. On the issue of absenteeism,
the ALJ noted Dr. Diamond found that "[a]bout twice a month,
[Marshall] would become nervous and jittery at work and have to
leave, suggesting that she is unable to meet competitive
standards only in the ability to maintain a regular and punctual
work schedule." Id. The ALJ stated that "[Marshall's
attorney's] assertion that [Marshall] would be absent from work
at least four days a month is not supported by the record."

The ALJ apparently misread Dr. Diamond's opinion.  The attorney's question to the vocational expert, which incorporated the limitation that on average Marshall would miss four days of work each month, was taken directly from Dr. Diamond's Mental Impairment Questionnaire.  Therefore, the ALJ failed to realize that the absenteeism cited by Marshall's attorney was supported by the record.

The Commissioner attempts to correct the ALJ's mistake by arguing that Dr. Diamond's opinion about Marshall's absenteeism is not entitled to weight under § 404.1527.  The Commissioner's citations to tidbits from the record to undermine Dr. Diamond's opinion are not persuasive.  In addition, the medical expert who testified at the hearing agreed with Dr. Diamond's opinions about Marshall's ability to function, although he was not asked to comment specifically about the rate of absenteeism.  Under the regulations, the ALJ was required to explain the weight he gave Dr. Diamond's opinions, and in this case, he simply overlooked the applicable opinion.

Because the ALJ failed to consider Dr. Diamond's opinion on absenteeism and failed to properly assess the opinion, the decision is based on error.

B.  Credibility

Marshall also challenges the ALJ's determinations that her
own description of her limitations was "at best, suspect" and
that she was not fully credible.  Admin. Rec. at 27-28.  In
assessing a social security claimant's credibility, an ALJ must
consider such factors as the medical signs and findings, medical
opinions, her medical history and treatment, her activities of
daily living, and the effects of any medications taken by the
claimant.  See Social Security Ruling 96-7p, July 2, 1996; Quimby
v. Astrue, 2008 WL 660180, at *3 (D. Me. March 5, 2008).  A
"strong indication of the credibility of an individual's
statements is their consistency, both internally and with other
information in the case record."  Id.

The ALJ noted that Marshall testified about symptoms related
to depression and bipolar disorder and about her medications and
their side effects.  The ALJ recorded Marshall's statements that
she continued to have "explosive behavior and mood swings," that
she sometimes could not leave home except to put her children on
the bus, that she had changed jobs frequently in the past because
of her illness, that she has had sleep problems, that she has had
difficulty with motivation, that there are days when she stays in
her pajamas all day, and that she needs mental health therapy but
cannot afford it.  The ALJ also noted that Marshall had returned

to school on a part time basis.  He concluded, "Thus, even the claimant's own inconsistent statements support the conclusion that her functional capacity is not as limited; she can engage in activities not indicative of a person who is completely disabled."  Admin. Rec. at 28.

The ALJ's conclusion does not appear to follow logically from the information he cites in support.  Marshall's description of her activities and symptoms does not suggest inconsistency or someone who can effectively perform the activities of daily living.  Therefore, the ALJ's assessment of Marshall's credibility also lacks a sufficient basis in the record.

<u>Conclusion</u>

For the foregoing reasons, the claimant's motion to reverse and remand the Commissioner's decision (document no. 8) is granted.  The Commissioner's motion (document no. 9) is denied.  Because this is a sentence four remand, the clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

December 22, 2008

cc:  D. Lance Tillinghast, Esquire
     Gretchen Leah Witt, Esquire